*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name:  10a0385p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re:  SETTLEMENT FACILITY DOW CORNING
TRUST

_____

DOW CORNING CORPORATION,
          *Interested Party-Appellant*,


          *v.*


CLAIMANTS' ADVISORY COMMITTEE,
          *Interested Party-Appellee*.

Nos. 09-1827/1830

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-00005—Denise Page Hood, District Judge.

Argued:  June 10, 2010

Decided and Filed:  December 17, 2010

Before:  BATCHELDER, Chief Judge; SUTTON and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** John Donley, KIRKLAND & ELLIS, LLP, Chicago, Illinois, for Appellant.
Jeffrey S. Trachtman, KRAMER LEVIN NAFTALIS & FRANKEL LLP, New York,
New York, for Appellee. **ON BRIEF:** John Donley, Douglas Geoffrey Smith, G. David
Mathues, KIRKLAND & ELLIS, LLP, Chicago, Illinois, Deborah E. Greenspan,
DICKSTEIN SHAPIRO LLP, Washington, D.C., for Appellant.  Jeffrey S. Trachtman,
KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP, New York, New York, Ernest H.
Hornsby, FARMER, PRICE, HORNSBY & WEATHERFORD, LLP, Dothan, Alabama,
Dianna Pendleton-Dominguez, LAW OFFICE OF DIANNA PENDLETON-
DOMINGUEZ, St. Marys, Ohio, for Appellee.

          KETHLEDGE, J., delivered the opinion of the court, in which SUTTON, J.,
joined.  BATCHELDER, C. J. (pp. 9-16), delivered a separate opinion concurring in part
and dissenting in part.

---

**OPINION**

---

KETHLEDGE, Circuit Judge.  Normally our task in construing a contract or similar document is to identify not merely a reasonable interpretation, but the best one.  In some cases, however, some other court or entity is better-positioned to determine what interpretation is best.  In those cases, we might ask whether that court's interpretation is reasonable, and if so leave matters there.

This is such a case.  At issue in these now-consolidated appeals are two orders interpreting different provisions of a single bankruptcy plan.  The court that entered those orders is more familiar with the plan and the circumstances surrounding it than we are, so we ask primarily whether its interpretations of the two provisions are reasonable.  We conclude that its interpretation of one provision is reasonable, but that, for technical grammatical reasons, its interpretation of the other provision is not.

I.

In 1995, Dow Corning had pending against it thousands of lawsuits relating to breast implants it had manufactured.  Dow Corning filed bankruptcy under Chapter 11 that year to facilitate settlement of those claims.  We have already described those bankruptcy proceedings in prior opinions.  *See, e.g.*, *In re Dow Corning Corp.*, 456 F.3d 668 (6th Cir. 2006).  Here, we describe only the facts relevant to these consolidated appeals.

Dow Corning's Amended Joint Plan of Reorganization (the Plan) took effect in June 2004.  The Plan establishes a $1.95 billion fund—administered by the Settlement Facility-Dow Corning Trust—for claimants who choose to settle rather than litigate their claims.  Each of the orders before us today involves a Plan definition that affects payments made pursuant to the Plan.

The first order concerns tissue expanders, which are devices implanted in the body and then gradually filled with saline solution in the weeks that follow. Their purpose is to expand the patient's skin around the device; and upon accomplishing that purpose, they are typically (if not always) removed. Dow Corning has manufactured more than 250 kinds of tissue expanders, three of which are specifically designed to be implanted in the breast. The question presented in the first appeal is whether those three types of tissue expanders are "Breast Implants" as defined by the Plan. The district court held they were, thereby opening the door to settlement payments based on a claimant's use of them.

The second order concerns the Plan's definition of total disability, which is set forth in a Plan document that the parties call Annex A. Claimants who meet the Plan's definition of total disability receive larger settlement payments than they otherwise would under the Plan. Dow Corning and the Claimants' Advisory Committee (the Committee) disagree as to what this definition means: Dow Corning takes a narrower view of the definition, the Committee a broader one. The district court held that the broader view is the correct one.

Dow Corning appealed both orders.

## II.

### A.

The parties dispute the standard of review. At issue in each appeal is the district court's interpretation of a definition set forth in the Plan. We review for abuse of discretion a bankruptcy court's interpretation of a plan that the court had confirmed. *See Dow Corning*, 456 F.3d at 676. But these appeals involve a decision by a district court, not a bankruptcy one, so the *Dow Corning* standard does not apply by its terms here. Dow Corning would take us to the other extreme: It argues that our review should be de novo, citing our rule that, "[i]n a bankruptcy case on appeal from a district court, we owe no special deference to the district court's decision[.]" *In re Eagle-Picher Indus., Inc.*, 447 F.3d 461, 463 (6th Cir. 2006). But that rule does not apply by its terms either,

because the district court here did not sit merely as an appellate court. It decided the issues before us in the first instance.

So we look to the underpinnings for each standard. On the one hand, the district court was not "interpret[ing] its own prior language or intent" when it interpreted the Plan, *Dow Corning*, 456 F.3d at 677, so that particular rationale for deference is not present here. But other rationales are. The district court judge who entered the orders at issue—Judge Denise Page Hood—has presided over this bankruptcy case continuously since 1995. She was present on the bench for two days of the Plan's confirmation hearings. And she has adjudicated the case directly since 2001, which is when she withdrew the reference to the bankruptcy court. (The bankruptcy judge who had entered the confirmation order departed the bench that year.) Thus, Judge Hood has presided over this case for fifteen years, and acted as the court of first resort for nine. There is simply no denying that she is much more familiar with this Plan—and with the parties' expectations regarding it—than we are.

So a measure of deference is in order. The question is how to characterize it. The district court's orders involve interpretation of the Plan; and "[i]n interpreting a confirmed plan, courts use contract principles[.]" *Id*. at 676. Contractual interpretation is not discretionary, so it is awkward to say that we review the court's interpretation for abuse of discretion. We need to convert the language of discretion to fit the task at hand.

A basic principle of contractual interpretation is that "[a] term is deemed ambiguous when it is capable of more than one reasonable interpretation." *Id.* (internal quotation marks omitted). Our court is reasonably well-equipped to determine whether a plan provision is ambiguous—we construe contracts all the time—though in this case we should be mindful that our blind spots with respect to how one provision might interrelate with others are likely much larger than are the district court's. On the whole, however, the determination whether a plan provision is ambiguous is not a point on which we substantially defer.

That point arrives, instead, when we determine that a provision is ambiguous. Then, under the law of virtually any jurisdiction, we open the cleanroom of textual

interpretation to whatever extrinsic evidence awaits outside. Here, each party has amassed a formidable dump of such evidence; and each side argues, in great detail, that its evidence shows that the other's interpretation would confound everyone's expectations as to what the Plan was supposed to mean. This is where we start to defer in earnest. The district court in this case, like the bankruptcy courts in others, is far-better equipped, not least in terms of background knowledge, to sort through that evidence and determine what is important.

Thus, to summarize: For purposes of plan interpretation, an ambiguous provision can reasonably be read more than one way. To determine which of the reasonable readings is best, the court normally may assess extrinsic evidence. That assessment is best left to the district court here. Thus, if the court assessed extrinsic evidence in choosing among reasonable interpretations of the Plan, we will not disturb its choice. That is the deference we afford the district court in these consolidated appeals.

B.

The first order concerns the Plan's definition of "Breast Implant." Section 1.17 of the Plan provides:

> ***Breast Implant*** means all silicone gel and saline-filled breast implants with silicone elastomer envelopes manufactured and either sold or otherwise distributed by the Debtor.

The issue before us is whether this definition encompasses tissue expanders that Dow Corning designed and manufactured specifically for implantation in the breast. The district court held, and Dow Corning does not dispute, that the three types of tissue expanders at issue here had silicone elastomer envelopes and were saline-filled. The only element of the definition that is disputed, therefore, is whether the subject expanders were "breast implants" as that term is used in the definition.

A definition that contains the defined term within it is very likely to be ambiguous. So it is here. The term "breast implant," as used in the definition (of "Breast Implant," amazingly), can reasonably be read to refer to any device specifically

designed for implantation in the breast.  That is how the district court read the term; and that reading draws additional support from the definition's use of the word "all[.]"

But there is another reading of the provision.  Dow Corning essentially contends that "breast implant" is a term of art, whose meaning was generally understood in the medical community to include only devices designed for long-term implantation—which, of course, tissue expanders are not.  And Dow Corning argues that "breast implant" should be given that technical meaning in § 1.17.  But that argument begs the question whether the words "breast implant" were used in a technical or more ordinary sense in this provision.  We see nothing in the definition's text that answers that question as a matter of logical necessity.  And we are not at all convinced by Dow Corning's "structural" arguments concerning the "qualifying product identifiers" in Annex A and the definition of "Other Products" in § 1.117 of the Plan.  Each of those arguments assumes that tissue expanders are not "Breast Implants"—which is to say the arguments are entirely circular.

The choice between these different readings of § 1.17, therefore, lies with the district court.  Even so, we cannot now affirm the order before us in case 09-1827. Although we hold that § 1.17 is ambiguous, the district court apparently thought it was not.  As a result, the court did not assess the parties' extrinsic evidence with respect to the provision.  And thus we have no such assessment to which we can defer.

Had the district court been the court that entered the order confirming the Plan, we would owe the court more deference than we owe it here, and would affirm the court's decision notwithstanding that omission.  *See Dow Corning*, 456 F.3d at 677 ("disagree[ing] with the bankruptcy court's conclusion that the plan was unambiguous[,]" but holding that the bankruptcy court did not "incorrectly interpret[] its own prior language or intent").  The court that enters an order has less need to consider extrinsic evidence of the order's meaning than a court that does not.  But the district court here did not enter the order confirming the Plan.  We therefore vacate the district court's order with respect to tissue expanders and remand the case to allow it to assess the relevant extrinsic evidence.  Once it does so, we expect to defer to its decision.

C.

The second order concerns the Plan's definition of total disability.  The relevant portion of Annex A provides:

> Death or total disability resulting from the compensable condition. An individual will be considered totally disabled if she demonstrates a functional capacity adequate to consistently perform none or only few of the usual duties or activities of vocation or self-care.

The parties dispute the showing necessary to meet this definition.  Dow Corning says the claimant must be disabled in both categories—vocation *and* self-care.  The Committee says that a claimant need be disabled in only one.  Thus, in the Committee's view, a claimant's inability to do more than a few activities in only one of the categories—vocation or self-care—is enough to meet the definition of total disability, even if she can do many activities in the other.

The district court's reasoning with respect to this provision was straightforward. Simply put, the court held that the word "or," as used in "vocation or self-care," was disjunctive, and that a showing of disability in either category was therefore enough to meet the definition.  In doing so, the court deemed the provision "unambiguous" and "look[ed] solely to the plain language used by the parties within the four corners of the contract."  Order at 11, 10.

With respect, we read the provision differently.  The word "or" is normally conjunctive when introduced by "none" or "not."  *See, e.g.*, Huddleston & Pullum, *Cambridge Grammar of the English Language* 1298 ("When a subclausal *or*-coordination falls within the scope of a negative, it is equivalent to an *and*-coordination of negative clauses").  To say that "none of the teachers or students will be at the school on July 4," for example, does not mean that only one of those groups will be absent that day.  It means that *both* groups will be.  So it is here: to say that a claimant can perform none (or only a few) of the activities of vocation or self-care, means that she is disabled from performing both types of activities.  (In the district court's defense: to say that this

provision is ultimately unambiguous, as we do here, is not to say that it is well-drafted.) Dow Corning's reading of this provision is correct.

\*     \*     \*

We vacate the order in case 09-1827, reverse the order in case 09-1830, and remand the cases for proceedings consistent with this opinion.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

ALICE M. BATCHELDER, Chief Judge, concurring in part and dissenting in part. I concur with the majority opinion's conclusion that the Plan definition of "total disability" requires a showing of disability in both vocational and self-care activities. In my opinion, that conclusion is required by the rules of English grammar, as recognized by the majority opinion, and by simple common sense. I write separately because I believe the majority opinion's discussion confuses, rather than clarifies, the standard of review in cases such as these. I must also dissent from the majority opinion's holding that the Plan definition of "Breast Implants" is ambiguous and its conclusion that the definition is even susceptible to the district court's interpretation.

A.    **Standard of Review**

The majority opinion searches for a new way to describe the standard of review in cases such as this. Our prior case law establishing the standard of review is not a model of clarity, but the majority opinion's efforts to "convert the language of discretion to fit the task at hand," Maj. Op. at 4, serves only to further muddy the waters. In my opinion, we should avoid crafting new standards of review when existing standards can be clarified.[1] Therefore, we should simply restate what was once plain—a district court's legal conclusions are reviewed de novo, and its factual findings are reviewed for an abuse of discretion. *Cf. In re Terex Corp.*, 984 F.2d 170, 172 (6th Cir. 1993) (holding that a bankruptcy court's legal conclusions regarding the Bankruptcy Code were subject to de novo review, but that interpretation of the terms of a bankruptcy plan were reviewed under an abuse of discretion standard).

---

[1] The majority opinion leaves open the question of whether it is discarding all old standards of review or whether it is crafting a new standard only for situations like the one before us. Unfortunately, the majority opinion also fails to elaborate on precisely what is unique about the "task at hand." Maj. Op. at 4. The inevitable result of this type of vagueness is a flood of new litigation, with litigants attempting to define the boundaries of the majority opinion's new standard.

We apply contract principles when we interpret a confirmed bankruptcy plan, "since the plan is effectively a new contract between the debtor and its creditors." *In re Dow Corning Corp.*, 456 F.3d 668, 675 (6th Cir. 2006). "State law governs those interpretations, and under long-settled contract law principles, if a plan term is unambiguous, it is to be enforced as written."[2] *Id.* A district court faced with the task of interpreting a confirmed bankruptcy plan, therefore, must engage in a two-step process. First, the district court must determine whether the plan's terms are ambiguous, a purely legal question under the state law of most states. If the district court finds the plan to be unambiguous, state contract law will typically require the district court to enforce the plan as written, without reference to extrinsic evidence. If, however, the district court finds the plan to be ambiguous, defined as being "capable of more than one reasonable interpretation," *id.*, then the meaning of the plan must be determined, a process which, in most states, requires consideration of the intent of the parties. In the first step, then, the district court engages in a purely legal inquiry, and begins its factual inquiry only in the event that it reaches the second step.

The majority opinion does not completely abandon de novo review of the district court's legal conclusions in the first step, but the language it uses casts unnecessary doubt on the ability of this court to correctly resolve questions of law which are not dependent upon the facts of the case. Maj. Op. at 4 ("Our court is *reasonably* well-equipped to determine whether a plan provision is ambiguous . . . though . . . we should be mindful that our blind spots . . . are likely much larger than are the district court's. . . . whether a plan provision is ambiguous is not a point on which we *substantially* defer.") (emphasis added). In my opinion, this type of equivocation is unnecessary and inappropriate. Instead, we should strongly affirm that we will review any legal conclusions de novo, as we have always done, without deference to the district court.

Application of our previous standard of review to the second step seems equally uncontroversial. It is true that the district court, in cases where the meaning of the plan

---

[2]Notably, the majority opinion fails even to discuss the applicable state contract law. As I explain, *infra*, application of state contract law would preclude the majority opinion's conclusion that the Plan definition of "Breast Implant" is ambiguous.

is ambiguous, will often be presented with mountains of extrinsic evidence. It is within the discretion of the district court to determine what evidence it will rely upon, and that choice by the district court will determine its ultimate conclusion as to the interpretation. When the case comes before us on appeal, we must determine whether the district court abused its discretion in arriving at its decision. In essence, we must affirm the district court unless we decide that the district court was unreasonable in its reliance on the evidence expressly or impliedly described in its opinion, or unless we decide that the district court was unreasonable in its rejection of other evidence that runs counter to its opinion.

The majority opinion paints this task as especially difficult and treacherous, in part due to the large quantity of extrinsic evidence. I disagree. Federal appellate judges are routinely called upon to review decisions of the district courts in cases where the record is extensive and complex–for example, petitions for writs of habeas corpus. Having sat as a bankruptcy judge, I am aware that bankruptcy cases can be complex, but not so much more so as to justify shirking our responsibility to provide the type of appellate review that we are responsible for under the Constitution and laws of the United States. Moreover, the majority opinion seems to ignore the reality that the district court's opinion, supplemented by the briefs filed by the parties, significantly narrows the range of issues that we must consider.

In short, I simply cannot join the majority opinion in setting forth a new standard of review which, I believe, will only serve to further confuse an area of law already beset with significant confusion. Instead, I would reiterate and apply our existing standard of review.

**B.     The Plan's Definition of "Breast Implant"**

Because state law governs our interpretation of a confirmed bankruptcy plan, *In re Dow Corning Corp.*, 456 F.3d at 676, our first task must be to identify the applicable state law. Surprisingly, the majority opinion neither identifies the applicable state law–Section 6.13 of the Plan states that New York law governs interpretation of Plan provisions–nor does the majority opinion discuss how the application of New York law

governs the conclusion reached. My review of New York law, as it applies to this case, leads me to conclude that application of New York law requires a conclusion opposite to that reached by the majority opinion. Applying New York law, I conclude that the Plan definition of "Breast Implant" is not ambiguous and that, as a matter of law, the Plan does not cover tissue expanders.

1.    *Is the Plan Language Ambiguous?*

Under New York law, as in most states, whether a contract term is ambiguous is a question of law. *Tenorio v. Tenorio*, 894 N.Y.S.2d 143, 144 (N.Y. App. Div. 2010). A term is deemed ambiguous when it is capable of more than one reasonable interpretation. *Discovision Assocs. v. Fuji Photo Film Co., Ltd.*, 898 N.Y.S.2d 11 (N.Y. App. Div. 2010) (quoting *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458 (2004). When a term becomes, within a certain industry, a term of art, courts are to apply the technical meaning of the term instead of any other "plain meaning" in general society. *See Madison Avenue Leasehold, LLC v. Madison Bentley Assocs. LLC*, 811 N.Y.S.2d 47, 52 (N.Y. App. Div. 2006); *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 798 (6th Cir. 2005).

The majority opinion recognizes Dow Corning's argument that the term "breast implant" is a term of art, Maj. Op. at 6, but then dismisses that argument by concluding that the Plan is ambiguous as to whether the term was used "in a technical or more ordinary sense" in the Plan, *id.* I believe the majority opinion's dismissal of Dow Corning's argument is both legally and factually flawed. Legally, the New York courts have already rejected the majority opinion's perceived conflict, holding that a term of art automatically trumps any "ordinary meaning." *Madison Avenue Leasehold, LLC*, 811 N.Y.S.2d at 52. If, as Dow Corning claims, the term "breast implant" is a term of art, then we are bound to apply that term of art in our interpretation of the Plan.

Dow Corning's argument is supported by the undisputed evidence that the medical community and the FDA both considered tissue expanders to be an entirely separate product from breast implants. The doctors who perform procedures using these products know what a breast implant is and know that a tissue expander is not a breast

implant. Likewise, "breast implant" means something very specific to the FDA, which has the authority to regulate all medical devices and has chosen to regulate breast implants but not tissue expanders. Appellee also argues that it should not be required to accept the term of art because the members of the Claimants' Advisory Committee are not in the medical device community, and wouldn't have understood the specific meaning of the term. In making this argument, however, Appellee fails to mention that each claimant was represented by counsel, and their counsel cannot be so easily classified as ignorant of the legal ramifications of the document they ratified.

Appellee's argument also ties into the factual flaw in the majority opinion's dismissal of Dow Corning's term-of-art argument. Specifically, the district court, Appellee, and now the majority opinion all struggle to contrive a conflict between technical meaning and "ordinary" meaning when, in my opinion, no such conflict exists. It is unreasonable to suppose, as the majority opinion does, that any reasonable lay person would consider tissue expanders to be "breast implants"; the term "breast implants" has not only achieved term-of-art status among the medical community, but also among the public at large. I have no doubt that if one hundred average Americans were approached on the street and asked to define a breast implant, none would describe a tissue expander. If a tissue expander were then described to them, and they were asked if a tissue expander was a breast implant, the vast majority would say no. Only lawyers and others who favor hyper-technical definitions *might* be inclined to include tissue expanders in the definition of breast implants, and I am convinced they would only do so after a significant amount of consideration and parsing of the terms.

Common sense and New York law compel the conclusion that the term "breast implant" unambiguously excludes tissue expanders, as a matter of law, and I would reverse the district court's determination to the contrary. Because the majority opinion fails to consider New York law and, consequently, arrives at the opposite conclusion, I respectfully dissent.

2.    *Extrinsic Evidence*

The question of ambiguity is a question of law, and therefore does not allow for consideration of the intent of the parties.  And, as explained *supra*, there is no ambiguity in the terms of the Plan.  However, even if there were ambiguity, I believe that the extrinsic evidence in this case clearly favors Dow Corning's interpretation of the Plan. Having conducted my own review of the record in this case, I would find that it is unreasonable to conclude that the Plan definition of "Breast Implants" includes tissue expanders, and I would *not* defer to the district court if it arrived at a contrary conclusion.

Under New York contract law, a contract "must be read as a whole to determine the parties' purpose and intent, giving a practical interpretation to the language employed so that the parties' reasonable expectations are realized." *Krape v. PDK Labs, Inc.*, 826 N.Y.S.2d 340, 342 (N.Y. App. Div. 2006) (internal quotation marks and citations omitted).  Moreover, "[a]lthough the words in a contract might seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view." *Id.* at 342-43 (internal quotation marks, citations, and brackets omitted).

The bankruptcy of Dow and other manufacturers of breast implants arose directly from the alleged dangers of breast implants, and the relevant portions of the Plan were to assure that those who allegedly had been injured by Dow Corning breast implants were able to receive compensation without incurring legal costs.  The undisputed evidence shows that the portion of product liability claims contemporary to the bankruptcy that arose from the use of tissue expanders was very low.

During the bankruptcy proceedings, Dr. Dunbar, the expert who had been asked to calculate the approximate amount of money needed in the compensation fund, expressly excluded all then-existing and predicted lawsuits based on tissue expanders, and there is no evidence that any party ever objected to his analysis excluding those lawsuits.  Appellee argues that Dr. Dunbar was hired by Dow Corning, so his opinions cannot be attributed to any claimant, but Dow Corning correctly responds that

Dr. Dunbar was officially designated in the record as preparing his testimony on behalf of the Plan "Proponents," which included both Dow Corning and the Tort Claimants Committee. *See In re Dow Corning Corp.*, 237 B.R. 364, 369 n.4 (Bankr. E.D. Mich. 1999).

In a somewhat misguided attempt to provide support for its arguments, Appellee provides numerous examples of the express inclusion of tissue expanders in the bankruptcy plans of other breast implant manufacturers. Other manufacturers' plans expressly list tissue expanders as compensable products or in the definition of breast implants. One example of the latter defines "Breast Implant" as "any breast implant device . . . including devices designed for temporary implantation in the breast (i.e. tissue expanders)." Appellee also provides a Notice associated with another manufacturer's bankruptcy that expressly includes tissue expanders. All of these examples, though provided by Appellee, are strong evidence that tissue expanders were *not* intended to be included in the Plan definition; the fact that other manufacturers' tissue expanders were repeatedly and expressly listed indicates that all relevant parties understood that the two products were different, and knew how to write an inclusive definition.

Appellee argues that claimants were assured that the procedures in place prior to the approval of the plans would be continued after the approval of the plan. "It is expressly intended that the Settling Breast Implant Claims shall be processed in substantially the same manner in which claims filed in the MDL-926 Claims Office under the Revised Settlement Program were processed." Plan § 4.03. The language makes clear, however, that the guarantee is a procedural guarantee, not a substantive one; even if the previous review of claims allowed compensation for claims based on the use of tissue expanders (and the evidence supporting this claim is sketchy, at best), there was no substantive guarantee going forward, only a guarantee that the procedures would not change.

Finally, Appellee argues that the Plan was intended to resolve all pending claims against Dow Corning, including those based on tissue expanders. That conclusion is not

clear from the record, but even assuming *arguendo* that it is a correct characterization, it presumes too much. Specifically, even if all claims were to be resolved, nothing requires that all claims be resolved in precisely the same manner, or even that all claims would be compensated from the Plan's compensation funds. In fact, the Plan specifically categorizes Dow Corning products into "Breast Implants," "Other Covered Products," and "Other Products." This classification system indicates that even if the purpose of the Plan was to resolve all claims, there was no intention of uniformity in *how* those claims were to be resolved. Both sides agree that tissue expanders are not included in the list of Other Covered Products. The third category, Other Products, includes a list of products, but also states that the list is not exclusive or comprehensive. As the only category that includes such broad, inclusive language, Other Products includes any term that does not fit well within the other classifications. Because, as described above, tissue expanders are not Breast Implants, they must be considered to be an Other Product.

The record in this case is long, but it is not overly complicated, and it simply does not support Appellee's preferred interpretation. Because the majority opinion clearly believes that it would be reasonable for the district court to find otherwise, and has come precariously close to directing it to do so, I must respectfully dissent.