ALICE M. BATCHELDER, Chief Judge,
concurring in part and dissenting in part.
I concur with the majority opinion’s conclusion that the Plan definition of “total disability” requires a showing of disability in both vocational and self-care activities. In my opinion, that conclusion is required by the rules of English grammar, as recognized by the majority opinion, and by simple common sense. I write separately because I believe the majority opinion’s discussion confuses, rather than clarifies, the standard of review in cases such as these. I must also dissent from the majority opinion’s holding that the Plan definition of “Breast Implants” is ambiguous and its conclusion that the definition is even susceptible to the district court’s interpretation.
A. Standard of Review
The majority opinion searches for a new way to describe the standard of review in cases such as this. Our prior case law establishing the standard of review is not a model of clarity, but the majority opinion’s efforts to “convert the language of discretion to fit the task at hand,” Maj. Op. at 772, serves only to further muddy the waters. In my opinion, we should avoid crafting new standards of review when *775 existing standards can be clarified.[1] Therefore, we should simply restate what was once plain — a district court’s legal conclusions are reviewed de novo, and its factual findings are reviewed for an abuse of discretion. Cf. In re Terex Corp., 984 F.2d 170, 172 (6th Cir.1993) (holding that a bankruptcy court’s legal conclusions regarding the Bankruptcy Code were subject to de novo review, but that interpretation of the terms of a bankruptcy plan were reviewed under an abuse of discretion standard).
We apply contract principles when we interpret a confirmed bankruptcy plan, “since the plan is effectively a new contract between the debtor and its creditors.” In re Dow Coming Corp., 456 F.3d 668, 675 (6th Cir.2006). “State law governs those interpretations, and under long-settled contract law principles, if a plan term is unambiguous, it is to be enforced as written.”[2] Id. A district court faced with the task of interpreting a confirmed bankruptcy plan, therefore, must engage in a two-step process. First, the district court must determine whether the plan’s terms are ambiguous, a purely legal question under the state law of most states. If the district court finds the plan to be unambiguous, state contract law will typically require the district court to enforce the plan as written, without reference to extrinsic evidence. If, however, the district court finds the plan to be ambiguous, defined as being “capable of more than one reasonable interpretation,” id., then the meaning of the plan must be determined, a process which, in most states, requires consideration of the intent of the parties. In the first step, then, the district court engages in a purely legal inquiry, and begins its factual inquiry only in the event that it reaches the second step.
The majority opinion does not completely abandon de novo review of the district court’s legal conclusions in the first step, but the language it uses casts unnecessary doubt on the ability of this court to correctly resolve questions of law which are not dependent upon the facts of the case. Maj. Op. at 772 (“Our court is reasonably well-equipped to determine whether a plan provision is ambiguous ... though ... we should be mindful that our blind spots ... are likely much larger than are the district court’s.... whether a plan provision is ambiguous is not a point on which we substantially defer.”) (emphasis added). In my opinion, this type of equivocation is unnecessary and inappropriate. Instead, we should strongly affirm that we will review any legal conclusions de novo, as we have always done, without deference to the district court.
Application of our previous standard of review to the second step seems equally uncontroversial. It is true that the district court, in cases where the meaning of the plan is ambiguous, will often be presented with mountains of extrinsic evidence. It is within the discretion of the district court to determine what evidence it will rely upon, and that choice by the district court will determine its ultimate conclusion as to the *776 interpretation. When the case comes before us on appeal, we must determine whether the district court abused its discretion in arriving at its decision. In essence, we must affirm the district court unless we decide that the district court was unreasonable in its reliance on the evidence expressly or impliedly described in its opinion, or unless we decide that the district court was unreasonable in its rejection of other evidence that runs counter to its opinion.
The majority opinion paints this task as especially difficult and treacherous, in part due to the large quantity of extrinsic evidence. I disagree. Federal appellate judges are routinely called upon to review decisions of the district courts in cases where the record is extensive and complex — for example, petitions for writs of habeas corpus. Having sat as a bankruptcy judge, I am aware that bankruptcy cases can be complex, but not so much more so as to justify shirking our responsibility to provide the type of appellate review that we are responsible for under the Constitution and laws of the United States. Moreover, the majority opinion seems to ignore the reality that the district court’s opinion, supplemented by the briefs filed by the parties, significantly narrows the range of issues that we must consider.
In short, I simply cannot join the majority opinion in setting forth a new standard of review which, I believe, will only serve to further confuse an area of law already beset with significant confusion. Instead, I would reiterate and apply our existing standard of review.
B. The Plan’s Definition of “Breast Implant”
Because state law governs our interpretation of a confirmed bankruptcy plan, In re Dow Coming Corp., 456 F.3d at 676, our first task must be to identify the applicable state law. Surprisingly, the majority opinion neither identifies the applicable state law — Section 6.13 of the Plan states that New York law governs interpretation of Plan provisions — nor does the majority opinion discuss how the application of New York law governs the conclusion reached. My review of New York law, as it applies to this case, leads me to conclude that application of New York law requires a conclusion opposite to that reached by the majority opinion. Applying New York law, I conclude that the Plan definition of “Breast Implant” is not ambiguous and that, as a matter of law, the Plan does not cover tissue expanders.
1. Is the Plan Language Ambiguous?
Under New York law, as in most states, whether a contract term is ambiguous is a question of law. Tenorio v. Tenorio, 70 A.D.3d 812, 894 N.Y.S.2d 143, 144 (N.Y.App.Div.2010). A term is deemed ambiguous when it is capable of more than one reasonable interpretation. Discovision Assocs. v. Fuji Photo Film Co., Ltd., 71 A.D.3d 488, 898 N.Y.S.2d 11 (N.Y.App. Div.2010) (quoting Evans v. Famous Music Corp., 1 N.Y.3d 452, 458, 775 N.Y.S.2d 757, 807 N.E.2d 869 (2004)). When a term becomes, within a certain industry, a term of art, courts are to apply the technical meaning of the term instead of any other “plain meaning” in general society. See Madison Avenue Leasehold, LLC v. Madison Bentley Assocs. LLC, 30 A.D.3d 1, 811 N.Y.S.2d 47, 52 (2006); Bridgeport Music, Inc. v. Dimension Films, 410 F.3d 792, 798 (6th Cir.2005).
The majority opinion recognizes Dow Coming’s argument that the term “breast implant” is a term of art, Maj. Op. at 773, but then dismisses that argument by concluding that the Plan is ambiguous as to whether the term was used “in a technical or more ordinary sense” in the Plan, id. I *777 believe the majority opinion’s dismissal of Dow Coming’s argument is both legally and factually flawed. Legally, the New York courts have already rejected the majority opinion’s perceived conflict, holding that a term of art automatically trumps any “ordinary meaning.” Madison Avenue Leasehold, LLC, 811 N.Y.S.2d at 52. If, as Dow Corning claims, the term “breast implant” is a term of art, then we are bound to apply that term of art in our interpretation of the Plan.
Dow Coming’s argument is supported by the undisputed evidence that the medical community and the FDA both considered tissue expanders to be an entirely separate product from breast implants. The doctors who perform procedures using these products know what a breast implant is and know that a tissue expander is not a breast implant. Likewise, “breast implant” means something very specific to the FDA, which has the authority to regulate all medical devices and has chosen to regulate breast implants but not tissue expanders. Appellee also argues that it should not be required to accept the term of art because the members of the Claimants’ Advisory Committee are not in the medical device community, and wouldn’t have understood the specific meaning of the term. In making this argument, however, Appellee fails to mention that each claimant was represented by counsel, and their counsel cannot be so easily classified as ignorant of the legal ramifications of the document they ratified.
Appellee’s argument also ties into the factual flaw in the majority opinion’s dismissal of Dow Coming’s term-of-art argument. Specifically, the district court, Appellee, and now the majority opinion all struggle to contrive a conflict between technical meaning and “ordinary” meaning when, in my opinion, no such conflict exists. It is unreasonable to suppose, as the majority opinion does, that any reasonable lay person would consider tissue expanders to be “breast implants”; the term “breast implants” has not only achieved term-of-art status among the medical community, but also among the public at large. I have no doubt that if one hundred average Americans were approached on the street and asked to define a breast implant, none would describe a tissue expander. If a tissue expander were then described to them, and they were asked if a tissue expander was a breast implant, the vast majority would say no. Only lawyers and others who favor hyper-technical definitions might be inclined to include tissue expanders in the definition of breast implants, and I am convinced they would only do so after a significant amount of consideration and parsing of the terms.
Common sense and New York law compel the conclusion that the term “breast implant” unambiguously excludes tissue expanders, as a matter of law, and I would reverse the district court’s determination to the contrary. Because the majority opinion fails to consider New York law and, consequently, arrives at the opposite conclusion, I respectfully dissent.
2. Extrinsic Evidence
The question of ambiguity is a question of law, and therefore does not allow for consideration of the intent of the parties. And, as explained supra, there is no ambiguity in the terms of the Plan. However, even if there were ambiguity, I believe that the extrinsic evidence in this case clearly favors Dow Coming’s interpretation of the Plan. Having conducted my own review of the record in this case, I would find that it is unreasonable to conclude that the Plan definition of “Breast Implants” includes tissue expanders, and I would not defer to the district court if it arrived at a contrary conclusion.
*778 Under New York contract law, a contract “must be read as a whole to determine the parties’ purpose and intent, giving a practical interpretation to the language employed so that the parties’ reasonable expectations are realized.” Krape v. PDK Labs, Inc., 34 A.D.3d 751, 826 N.Y.S.2d 340, 342 (N.Y.App.Div.2006) (internal quotation marks and citations omitted). Moreover, “[a]lthough the words in a contract might seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view.” Id. at 342-43 (internal quotation marks, citations, and brackets omitted).
The bankruptcy of Dow and other manufacturers of breast implants arose directly from the alleged dangers of breast implants, and the relevant portions of the Plan were to assure that those who allegedly had been injured by Dow Corning breast implants were able to receive compensation without incurring legal costs. The undisputed evidence shows that the portion of product liability claims contemporary to the bankruptcy that arose from the use of tissue expanders was very low.
During the bankruptcy proceedings, Dr. Dunbar, the expert who had been asked to calculate the approximate amount of money needed in the compensation fund, expressly excluded all then-existing and predicted lawsuits based on tissue expanders, and there is no evidence that any party ever objected to his analysis excluding those lawsuits. Appellee argues that Dr. Dunbar was hired by Dow Corning, so his opinions cannot be attributed to any claimant, but Dow Corning correctly responds that Dr. Dunbar was officially designated in the record as preparing his testimony on behalf of the Plan “Proponents,” which included both Dow Corning and the Tort Claimants Committee. See In re Dow Coming Corp., 237 B.R. 364, 369 n. 4 (Bankr.E.D.Mich.1999).
In a somewhat misguided attempt to provide support for its arguments, Appellee provides numerous examples of the express inclusion of tissue expanders in the bankruptcy plans of other breast implant manufacturers. Other manufacturers’ plans expressly list tissue expanders as compensable products or in the definition of breast implants. One example of the latter defines “Breast Implant” as “any breast implant device ... including devices designed for temporary implantation in the breast (i.e. tissue expanders).” Appellee also provides a Notice associated with another manufacturer’s bankruptcy that expressly includes tissue expanders. All of these examples, though provided by Appellee, are strong evidence that tissue expanders were not intended to be included in the Plan definition; the fact that other manufacturers’ tissue expanders were repeatedly and expressly listed indicates that all relevant parties understood that the two products were different, and knew how to write an inclusive definition.
Appellee argues that claimants were assured that the procedures in place prior to the approval of the plans would be continued after the approval of the plan. “It is expressly intended that the Settling Breast Implant Claims shall be processed in substantially the same manner in which claims filed in the MDL-926 Claims Office under the Revised Settlement Program were processed.” Plan § 4.03. The language makes clear, however, that the guarantee is a procedural guarantee, not a substantive one; even if the previous review of claims allowed compensation for claims based on the use of tissue expanders (and the evidence supporting this claim is sketchy, at best), there was no substantive guarantee going forward, only a guarantee that the procedures would not change.
*779 Finally, Appellee argues that the Plan was intended to resolve all pending claims against Dow Corning, including those based on tissue expanders. That conclusion is not clear from the record, but even assuming arguendo that it is a correct characterization, it presumes too much. Specifically, even if all claims were to be resolved, nothing requires that all claims be resolved in precisely the same manner, or even that all claims would be compensated from the Plan’s compensation funds. In fact, the Plan specifically categorizes Dow Corning products into “Breast Implants,” “Other Covered Products,” and “Other Products.” This classification system indicates that even if the purpose of the Plan was to resolve all claims, there was no intention of uniformity in how those claims were to be resolved. Both sides agree that tissue expanders are not included in the list of Other Covered Products. The third category, Other Products, includes a list of products, but also states that the list is not exclusive or comprehensive. As the only category that includes such broad, inclusive language, Other Products includes any term that does not fit well within the other classifications. Because, as described above, tissue expanders are not Breast Implants, they must be considered to be an Other Product.
The record in this case is long, but it is not overly complicated, and it simply does not support Appellee’s preferred interpretation. Because the majority opinion clearly believes that it would be reasonable for the district court to find otherwise, and has come precariously close to directing it to do so, I must respectfully dissent.

. The majority opinion leaves open the question of whether it is discarding all old standards of review or whether it is crafting a new standard only for situations like the one before us. Unfortunately, the majority opinion also fails to elaborate on precisely what is unique about the "task at hand.” Maj. Op. at 772. The inevitable result of this type of vagueness is a flood of new litigation, with litigants attempting to define the boundaries of the majority opinion’s new standard.

. Notably, the majority opinion fails even to discuss the applicable state contract law. As I explain, infra, application of state contract law would preclude the majority opinion’s conclusion that the Plan definition of "Breast Implant” is ambiguous.