**In re TEREX CORPORATION, Debtor.**

**TEREX CORPORATION,
Plaintiff–Appellant,**

**v.**

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant–Appellee.**

**No. 91–3865.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 19, 1992.

Decided Jan. 20, 1993.

Richard Gurbst, Dennis G. Terez (argued and briefed), Squire, Sanders & Dempsey, Cleveland, OH, for debtor and plaintiff-appellant.

Alan R. Lepene, Dean D. Gamin (argued and briefed), Thompson, Hine & Flory, Cleveland, OH, for defendant-appellee.

Before: KENNEDY, MARTIN, and SUHRHEINRICH, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Debtor, Terex Corporation ("Terex"), appeals the district court's judgment affirming the bankruptcy court's order directing Terex to pay Metropolitan Life Insurance Company ("Metropolitan") interest on a claim for unpaid post-petition insurance premiums. For all of the reasons that follow, we AFFIRM.

I.

In November 1983, Terex Corporation filed for reorganization under Chapter 11 of the Bankruptcy Code. During the reorganization proceedings, Metropolitan filed a claim against Terex for $118,146.15 in unpaid insurance premiums due under a contract between Terex and Metropolitan that provided insurance benefits for Terex employees. Pursuant to 11 U.S.C. § 507(a)(4) (1988),[1] Metropolitan's claim acquired priority status.

In August 1986, Terex proposed a Modified Plan of Reorganization (the "Plan"). In relevant part, the Plan provided that "Allowed Unsecured Claims of the kinds specified in [11 U.S.C.] Section[ ] ... 507(a)(4) ... shall be paid by the Debtor, in Cash, on the Distribution Date."[2] On November 3, 1986, the bankruptcy court ap-

---

**1.** 11 U.S.C. § 507(a)(4) (1988) lists "unsecured claims for contributions to an employee benefit" as fourth priority claims.

**2.** The distribution date is defined under the Plan as the twentieth business day after the effective date of the Plan. The effective date is defined as the first business day after the latter of (i) the date the Confirmation Order becomes a Final Order or (ii) the date on which certain conditions in the Plan are met or waived.

proved the Plan.[3] Despite the language in the Plan, Metropolitan's claim was not paid on the distribution date. Instead, Terex interposed an objection to the claim as permitted by the Plan.

In December 1988, Metropolitan filed a motion for summary judgment on its claim for unpaid premiums; in its motion, Metropolitan also requested interest from the date of distribution so that it would receive the value of its claim as of the date of distribution. The bankruptcy court granted the motion and reserved judgment on the issue of interest. Later, on October 11, 1989, the bankruptcy court awarded Metropolitan interest on the claim at a rate of 10% per annum from November 3, 1986, the effective date of the Plan. Terex objected to the award of interest, arguing that interest was improper and that, in any event, interest could only be awarded from the date the claim was first determined to be "allowed," February 13, 1989. The district court affirmed the interest award, and this timely appeal resulted.

## II.

The parties differ on the standard of review to be applied in this case. The standard of review on appeal is determined by the nature of the action taken below by the bankruptcy court. Terex argues that because the bankruptcy court relied on specific provisions of the Bankruptcy Code in arriving at its decision, the standard of review should be de novo. In contrast, Metropolitan contends that the bankruptcy court exercised its equitable powers in resolving the interest issue and that an abuse of discretion standard should therefore apply. To resolve this dispute, we turn to the reasoning and language in the bankruptcy court's July 31, 1991 order awarding interest on the claim.

In the order, the bankruptcy court first determined that an award of interest would not run contrary to provisions of the Plan. Specifically, after reviewing the Plan, the bankruptcy court concluded that there was "nothing within the Plan to prevent pay-

ment of [Metropolitan's] claim at the value owed on the Distribution Date." Next, after noting that the Plan required payment of the allowed claim on the date of distribution, but that the claim was not classified as allowed until after that date, the bankruptcy court remarked that "it would be *inequitable* to allow the Debtor to manifest an intent to pay [11 U.S.C. § ] 507(a)(4) claims on the Distribution Date while attempting to do otherwise by the mere definitional requirement." (emphasis added). The bankruptcy court added that "[t]o hold otherwise would permit debtors to initially contest claims and thereby keep the amount only to abandon the argument later and therefore effectively pay creditors less than their claims." Based on this equitable consideration, the bankruptcy court awarded interest from the effective date of the Plan rather than from the date on which the claim was allowed.

We conclude that although the bankruptcy court referred to explicit provisions of the Bankruptcy Code, it did not rely on or interpret the Bankruptcy Code. Its ruling, therefore, cannot be said to constitute a legal conclusion subject to de novo review. Rather, we believe that the bankruptcy court interpreted the Plan, and then exercised its equitable powers to breath life into the provisions of the Plan. Accordingly, we review the interpretation of the Plan with full deference, *see In re Chicago Railroad Co.*, 961 F.2d 1260, 1264 (7th Cir. 1992), and we review the bankruptcy court's exercise of its equitable powers under an abuse of discretion standard. *Barrett v. Secretary of Health & Human Serv.*, 840 F.2d 1259, 1263 (6th Cir.1987) (standard of review in equitable actions is abuse of discretion); *Bank of Honolulu v. Anderson (In re Anderson)*, 833 F.2d 834, 836 (9th Cir.1987) (as a matter of equity, awards and denials of post-petition interest are reviewed for abuse of discretion); *FDIC v. Hogan (In re Gulfco Inv. Co.)*, 593 F.2d 921, 926 (10th Cir.1979).

---

**3.** The Plan defines an "allowed" claim as one as to which any objection has been determined by

a Final Order of the Bankruptcy Court allowing such claim in whole or in part.

## A.

Terex first argues that the bankruptcy court's interest award is contrary to the terms of the Plan. Specifically, Terex contends that § 2.5 of the Plan precludes a retrospective interest award. Terex, therefore, claims that the bankruptcy court's interpretation of the Plan was erroneous.

Contrary to Terex's contention, § 2.5 does not preclude a retrospective award of interest. Section 2.5 merely sets the point in time (i.e., the distribution date) at which an allowed claim is to be paid. It does not say that a claim which after the distribution date is first classified as "allowed" cannot be awarded at the value owed on the distribution date or at the value owed on the effective date as mandated by § 2.5 of the Plan. Given the plausibility of the bankruptcy court's interpretation of the Plan, we cannot conclude that the court's construction of the Plan was erroneous.

## B.

Terex next argues that in awarding interest, the bankruptcy court violated various provisions of the Bankruptcy Code. "The traditional understanding [is] that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." *United States v. Energy Resources Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990). The bankruptcy court's equitable actions, however, cannot contravene specific provisions of the Bankruptcy Code. *Id.* at 549–50, 110 S.Ct. at 2142. Specifically, Terex contends that the interest award conflicts with 11 U.S.C. §§ 1127(b) (governing modification of plans), 502(b)(2) (proscribing awards of interest on pre-petition claims), and 1129(a)(9)(B) (controlling con-

firmation of plans that include unsecured priority claims, like Metropolitan's 507(a)(4) claim for contributions to an employee benefit plan). We disagree.

## 1.

Section 1127(b)[4] of the Bankruptcy Code details the circumstances and procedures under which a plan of reorganization can be modified after confirmation. It is not necessary to delve into the particularities of § 1127(b) because the bankruptcy court interpreted, not modified, the Plan. The bankruptcy court's award of interest was an equitable action meant to award Metropolitan the value of its claim as of the effective date. This action forced the bankruptcy court to interpret the Plan to ensure that an award of interest would not run afoul of the Plan's provisions. Because the bankruptcy court did not modify the Plan, § 1127(b) is not implicated.

## 2.

Section 502(b)(2) forbids accrual, after the date of bankruptcy filing, of unmatured interest on a claim. Metropolitan has never contended that the unpaid insurance premiums accrue interest as if on an open account. In its motion, Metropolitan demanded, and the bankruptcy court approved, only the amount of the unpaid premiums. There was no claim for and no award of unmatured interest. As indicated above, the award of interest compensated Metropolitan for the value of its claim as of the effective date of the Plan. We conclude, therefore, that the bankruptcy court did not violate § 502(b).

In addition, this court has recognized exceptions[5] to the general rule pro-

---

**4.** 11 U.S.C. § 1127(b) (1988) states:

The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice

and a hearing, confirms such plan as modified, under section 1129 of this title.

**5.** Three nonexclusive exceptions have been developed by the federal courts: (1) where the alleged bankrupt proves solvent; (2) where the collateral produces income after the filing of the petition; and (3) where the collateral is sufficient to pay interest as well as the principal of the claim. *Thompson v. Kentucky Lumber Co.* (*In re* Kentucky Lumber Co.), 860 F.2d 674, 676–77 (6th Cir.1988) (citations omitted).

hibiting payment of post-petition interest, in recognition of the equitable nature of insolvency proceedings:

> The reorganization court must consider whether to grant post-petition interest, not as an abstract matter, but in light of the nature of each claim and the equities of the case before it. At all times the reorganization court must be guided by the basic equitable principles announced in *Vanston [Bondholders Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946)]:
>
>> It is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and debtor.

*Thompson v. Kentucky Lumber Co. (In re* Kentucky Lumber Co.), 860 F.2d 674, 677 (6th Cir.1988) (citations omitted). The bankruptcy court merely balanced the equities and determined that Terex should not be permitted to avoid interest payments by merely objecting to Metropolitan's claim (and then dropping the objection when it came time for trial).

In balancing the equities, preventing this potential abuse by debtors outweighs any unfairness to the other creditors who might not have voted for the Plan had they known about the debtor's obligation to pay additional interest. The Plan explicitly states that Terex would have to pay certain priority claims, in cash, on the distribution date, and the Creditors' Committee was aware of Metropolitan's claim. In addition, the other creditors benefited by the fact that Terex did not pay Metropolitan's claims for three years after confirmation of the Plan. Terex has had the use of Metropolitan's funds since the effective date of the Plan, and the bankruptcy court did not err in concluding that equity dictates that Terex pay interest on the claim.

### 3.

■ Section 1129 [6] establishes the threshold requirements for confirmation of a Plan. In relevant part, at subsection (a)(9)(B), it mandates that 507(a)(4) claims, like Metropolitan's, be paid either (1) in deferred cash payments, as of the effective date of the plan, equal to the allowed amount of the claim, or (2) in cash on the effective date of the plan equal to the total allowed amount of the claim. Terex is correct in noting that § 1129 merely relates to the process of confirming a plan and does not govern the administration of a plan or specifically authorize the bankruptcy court's action. However, the bankruptcy court did not rely on it as authority for the award. Rather, the bankruptcy court merely cited the section as support for the notion that 507(a)(4) claims could not be diminished by the passage of time and that an award of interest was the only means by which Metropolitan's claim could be paid in a manner consistent with § 1129(a). We agree and conclude that the bankruptcy court's award of interest does not run contrary to § 1129(a).

In reaching our decision, we are persuaded by *United States v. Arrow Air, Inc. (In re* Arrow Air, Inc.), 101 B.R. 332 (S.D.Fla. 1989). *Arrow* involved the issue of whether the government was entitled to post-confirmation interest on its priority tax claim, pursuant to § 1129(a)(9)(C). [7] The

---

**6.** In relevant part, 11 U.S.C. § 1129(a)(9)(B) (1988) specifically states that:

> [t]he court shall confirm a plan only if all of the following requirements are met:
>
> . . . .
>
> [e]xcept to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—
>
> . . . .
>
> with respect to a class of claims of a kind specified in section ... 507(a)(4)[ ] ... of this title, each holder of a claim of such class will receive—

> . . . .
>
> if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>
> . . . .
>
> if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim. . . .

**7.** This provision is similar to 11 U.S.C. § 1129(a)(9)(B) (1988) in that it provides, in essence, that a bankruptcy court shall confirm a plan of reorganization only if the holder of a

Reorganization Plan in that case provided that priority tax claims would be paid "in cash in full to the holder of such claims." *Id.* at 334. The court adopted the position of the IRS that by promising to pay the priority claims of the government "in full" under the language of the plan, appellee guaranteed payment in the manner provided by § 1129(a)(9)(C). In a footnote, the court stated:

> [w]e concede that the Government's claim could have been more specific with regard to post-petition interest. However, the plan itself could have been more specific by explicitly excluding "post-petition interest," rather than simply stating that secured claims would be paid in full—100%. Under these facts we fault the debtor any ambiguity, not the creditor. The crucial point is that the plan was confirmed by the court. It is the debtor's obligation when seeking the court's confirmation to specify as accurately as possible the amounts which it intends to pay the creditors.

*Id.* at 335 (citing *Fawcett v. United States* (*In re* Fawcett), 758 F.2d 588, 590 (11th Cir.1985)) (holding that a debtor was required to pay the government post-petition interest on its secured claim where the plan of reorganization called for payment). Because the language of § 2.5 of the Plan at issue, providing that "allowed unsecured claims of the kind specified in § 507(a)(4) shall be paid by the Debtor," can be interpreted as requiring payment by the debtor "in full," then this section should be read *in conjunction* with § 1129(a)(9)(B) of the Bankruptcy Code to ensure that Metropolitan's priority claim receives its full value.[8] In other words, the bankruptcy court concluded, in a manner consistent with its equitable authority, that Terex guaranteed payment pursuant to § 1129(a)(9)(B) when under the Plan it promised to pay the priority claims of unsecured creditors.

### III.

For all of the foregoing reasons, the district court's judgment affirming the bankruptcy court's award of interest is AFFIRMED.

---

priority tax claim will receive "on account of such claim deferred cash payments ... of a value, as of the effective date of the plan, equal to the allowed amount of such claim."

**8.** Terex argues that because no reference is made to post-petition interest in § 2.5, while such reference is made in § 2.3, post-petition

interest is unavailable for claims under § 2.5. However, it is clear that § 2.3 is patterned after Bankruptcy Code § 1129(a)(9)(C). It could be argued, therefore, that § 2.5 was meant to be patterned after § 1129(a)(9)(B), thus supporting the Bankruptcy Court's reliance on this provision, as well as its award of interest.