In re BEAL BANK, S.S.B., Appellant,

v.

JACK'S MARINE, INC. and Jack's Neshaminy Marina, Inc., Appellee.

Civil Action No. 95–5752.
Bankruptcy Nos. 90–21609, 90–21610.

United States District Court,
E.D. Pennsylvania.

Aug. 12, 1996.

Richard Kwasny, Joshua Markowitz, Markowitz and Zindler, Lawrenceville, NJ, for Jack's Marine, Inc., Jack's Neshaminy Marine, Inc.

Jeffrey Kurtzman, Klehr, Harrison, Harvey, Branzburg, Ellers, Philadelphia, PA, Herbert A. Delap, Weinhart, Boerner, Van Deuren, Norris & Rieselbach, P.C., Denver, CO, for Beal Bank, S.S.B.

Kevin L. Flanagan, Capehart & Scatchard, P.A., Mount Laurel, NJ, for Bombardier Capital, Inc.

Frederick J. Baker, U.S. Trustee, U.S. Department of Justice, Philadelphia, PA, pro se.

## MEMORANDUM AND ORDER

O'NEILL, Senior District Judge.

Beal filed a motion pursuant to 11 U.S.C. § 1112(b) (1994) to convert or dismiss this Chapter 11 proceeding. By Order entered August 11, 1995, the Bankruptcy Court denied this motion, required the Debtor to pay Beal pursuant to the confirmed plan of reorganization, extended the deadline for that payment by 60 days, and required Beal to assign its mortgage and related debt instruments to Bombardier upon full payment. On appeal Beal argues that the Bankruptcy Court: (1) lacked jurisdiction to create a remedy that exceeded the scope of § 1112(b); (2) modified the confirmed plan of reorganization in violation of 11 U.S.C. § 1127 (1988); and (3) failed to set forth specific findings of fact and conclusions of law as required by Fed.R.Civ.P. 52 and Fed.R.Bankr.P. 7052. For the reasons that follow, I will affirm the decision below.

This court has appellate jurisdiction under 28 U.S.C. § 158(a) (1994). The Bankruptcy Court's findings of fact are reviewed under a clearly erroneous standard, while its conclusions of law are subject to plenary review. *Mellon Bank. N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 641 (3d Cir.1991), *cert. denied sub nom., Committee of Unsecured Creditors v. Mellon Bank, N.A.*, 503 U.S. 937, 112 S.Ct. 1476, 117 L.Ed.2d 620 (1992).

In July 1990, Jack's Marine, Inc. and Jack's Neshaminy Marina, Inc. (collectively the "Debtor") filed separate voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. On October 12, 1993, the Bankruptcy Court entered an order confirming the Debtor's Third Amended Joint Plan of Reorganization. The Plan required the Debtor to pay the Resolution Trust Corporation $500,000 on the effective date of the Plan in satisfaction of the RTC's $1,273,367 claim. Shortly after confirmation of the Plan, the RTC and the Debtor began negotiations to modify the terms of repayment. As a result of these negotiations

Bombardier would pay $400,000 to the RTC in return for an assignment of the RTC mortgage, and the Debtor would furnish the remaining $100,000.[1]

Because the RTC did not receive its $500,000 on the effective date of the Plan, it filed a motion to convert or dismiss the case pursuant to 11 U.S.C. § 1112(b). However, the parties reached an agreement and on February 23, 1994, the Bankruptcy Court entered a Consent Order in resolution of the RTC's motion. The Consent Order required the Debtor to pay the balance of the RTC's claim within 45 days and provided that the Debtor consented to the conversion of the case if the Debtor failed to make the payment.

Although the Debtor failed to make payment as required by the Consent Order, the Debtor was not solely responsible. A contributing factor in the delay in funding by Bombardier was the fact that the RTC was in the process of selling the loan documents.

In November of 1994, Beal Bank ("Beal") acquired the RTC's claim. After refusing to assign its mortgage to Bombardier, Beal filed a motion to convert or dismiss the case pursuant to § 1112(b). The Debtor, however, maintained that it was prepared to make the required payment, provided that Beal abide by the RTC's agreement to assign the mortgage. On August 11, 1995, the Bankruptcy Court entered an order which denied the motion, required the Debtor to pay Beal pursuant to the confirmed plan, extended the payment deadline until September 19, and required Beal to assign its mortgage and related debt instruments to Bombardier.

 Beal argues that the only issue before the Bankruptcy Court was its motion to dismiss or convert pursuant to § 1112(b) and that the Court lacked jurisdiction to fashion an order outside the scope of that motion. Title 11 U.S.C. § 1142(b) (1988) specifically confers subject matter jurisdiction on bankruptcy courts to resolve postconfimation issues necessary to execute the confirmed

---

1. As discussed below, *see infra* p. 379, the Debtor later contended that the RTC had agreed to accept $450,000 as full payment of its claim. The Bankruptcy Court held that such an agreement had not been proven.

plan.[2] However, postconfirmation jurisdiction is limited by the need to end the debtor's tutelage status before such oversight causes harm. *Walnut Associates v. Saidel,* 164 B.R. 487, 492 (E.D.Pa.1994); *In re Cinderella Clothing Indus., Inc.,* 93 B.R. 373, 376 (Bankr.E.D.Pa.1988). Thus, postconfirmation jurisdiction pursuant to § 1142(b) is generally restricted to protecting the confirmation order, preventing interference with the reorganization and aiding in the plan's execution. *In re Greenley Energy Holdings of Pennsylvania,* 110 B.R. 173, 180 (Bankr. E.D.Pa.1990); *In re Dilbert's Quality Supermarkets, Inc.,* 368 F.2d 922, 924 (2d Cir. 1966).

■■■ As courts of equity, bankruptcy courts enjoy broad authority to modify creditor-debtor relationships within the scope of their jurisdiction. *United States v. Energy Resources Co.,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). Section 105 of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (1994). The Second Circuit has stated that bankruptcy courts:

> may sift the circumstances surrounding any claim in order to ascertain that injustice or unfairness is not accomplished in the administration of the debtor's estate, and in so doing may adopt that remedy which it deems most appropriate under the circumstances.

*In re Stirling Homex Corp.,* 591 F.2d 148, 155–56 (2d Cir.1978) (quoting *6 Collier, On Bankruptcy,* 3.17 (14th ed. 1978)). Additionally, this Court has recognized that:

> the bankruptcy court has authority to take any action or make any determination necessary or appropriate to enforce or implement orders and rules or to prevent an abuse of process and to act *sua sponte* when it is issuing orders or taking any action.

*In re Assaf,* 119 B.R. 465 (E.D.Pa.1990).[3]

In rendering its decision, the Bankruptcy Court clearly acted to protect the confirmation order and to aid in the implementation of the Plan. Negotiations between the Debtor and the RTC had modified the terms of repayment, yet the extent of these modifications was disputed. The Debtor contended that the RTC had agreed to accept $450,000 in full satisfaction of its claim and to assign its mortgages to Bombardier upon payment. Under these conditions, the Debtor asserted that it was ready to meet its obligations. Beal refused to accept either of these provisions and moved to dismiss or convert. Although Beal correctly asserts that the Bankruptcy Court was required to enforce the agreement set forth in the Consent Order, it refuses to recognize the ambiguities introduced by the Debtor's negotiations with the RTC. The dispute over the terms of the agreement had already delayed payment of the claim; without court intervention the confirmed plan of reorganization would have failed. By creating a remedy beyond the scope of Beal's motion to convert or dismiss, the Bankruptcy Court exercised its equitable powers within its jurisdiction under § 1142(b) to protect the confirmation order and to aid in the execution of the Plan.

---

**2.** That section provides: "The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan."

**3.** Beal's position that the Bankruptcy Court erred when it entered the Order *sua sponte* is both factually and legally incorrect. The final paragraph of the Debtor's Answer to the Motion stated:

> "... it is respectfully requested that this Court deny the Beal Motion, and compel Beal to

assign its mortgage to Bombardier upon payment of the sums remaining to be paid by the Debtors under the terms of the Plan, as modified by the Consent Order and for such other and further relief as this Court deems, just, equitable and proper."

Later, at a hearing before the Court on July 19, 1995, the Debtor requested the 60 day extension.

As this Court has recognized in *In re Assaf,* the bankruptcy court can act *sua sponte* when issuing orders. 119 B.R. 465 (E.D.Pa.1990). Though a bankruptcy court cannot, *sua sponte,* modify a confirmed plan, *Goodman v. Phillip R. Curtis Enter., Inc.,* 809 F.2d 228, 234 (4th Cir. 1987), in the present case the Court acted, not to modify the Plan, but to protect it and to aid in its implementation.

■ Beal also asserts that by requiring it to assign its mortgages to Bombardier and by extending the payment deadline, the Bankruptcy Court modified the plan of reorganization in violation of § 1127, which establishes procedures for modifying a confirmed plan. Though a bankruptcy court exercises its equitable powers at its own discretion, it cannot override specific provisions of the Bankruptcy Code. *Terex Corp. v. Metropolitan Life Insurance Co.*, 984 F.2d 170, 173 (6th Cir.1993) *citing United States v. Energy Resources Co.*, 495 U.S. 545, 549–50, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990). Nor can a court rewrite a confirmed plan on the grounds of perceived equities. *In re Diamond Mortg. Corp. of Illinois*, 105 B.R. 876, 883 (Bankr.N.D.Ill.1989). Section 1127 does not define "modification", nor does the definitional section of chapter eleven. *See* 11 U.S.C. §§ 1127, 1101. However, a bankruptcy court may clarify a plan where it is silent or ambiguous. *United States for the Internal Revenue Service v. APT Industries, Inc.*, 128 B.R. 145, 146 (W.D.N.C.1991). Bankruptcy courts can also use this authority to "interpret" plan provisions to further equitable concerns. *See Terex*, 984 F.2d at 173 (holding that bankruptcy court's award of interest to insurer for unpaid claim was not modification of confirmed plan but rather interpretation of plan as equitable action).

Requiring Beal to assign its mortgage to Bombardier upon payment of its claim did not constitute an improper modification, but instead represented an exercise of its continuing authority to supervise the plan. This requirement did not alter any provision of the Plan. Instead, the Court clarified the Plan on a matter on which it was silent. Imposing this condition upon Beal had no adverse effect upon the bank since payment of its claim would result in the discharge of its mortgage. No violation of § 1127 occurred since the Bankruptcy Court interpreted, not modified, the Plan when it required Beal to assign its mortgage.

■ Although extending the payment deadline alters a plan provision, this action does not constitute an improper modification.

The present case is analogous to *In re Johns–Manville Corp.*, 920 F.2d 121 (2d Cir. 1990), in which the Second Circuit held that temporarily suspending the operation of a claims resolution facility was not an illegal modification, but instead "a variation ... with respect to the timing and intensity of claim processing." 920 F.2d at 128–29. Acting under its authority to enforce the confirmed plan, the bankruptcy court did not violate § 1127 by authorizing the suspension. *Id.* In support of this holding, the Second Circuit noted that the suspension, and the resulting delay in claim payments, did not alter the substantive rights of the claimants or frustrate legitimate claims. *Id.* Similarly, delaying payment to Beal by 60 days did not alter its substantive rights. Under the Court's order Beal would receive the full value of its claim plus interest for the period from April 11, 1994 through the date of closing.

■ Moreover, Beal itself shares responsibility for necessitating this extension. The dispute between Beal and the Debtor as to the mortgage assignment had prevented Bombardier from determining if such an assignment is insurable. In order to make this determination, Bombardier requested a 60 day extension. Clearly, a significant reason for this delay was Beal's refusal to honor the RTC's agreement with the Debtor. Though the Bankruptcy Court did not find that Beal had acted in bad faith, it did recognize that the Debtor should be given the opportunity to perform. To allow a creditor to force the conversion or dismissal of a Chapter 11 case when there is a genuine dispute over its commitments to the debtor would clearly violate the interests of justice. *Cf. Terex*, 984 F.2d at 174. By granting the extension, the Bankruptcy Court acted to salvage the confirmed plan of reorganization from the parties' dispute. Rather than being an improper modification, the Court's extension of the payment deadline more properly constitutes a necessary variation.[4]

■ Finally, Beal asserts that the Bankruptcy Court failed to make adequate findings of fact pursuant to Bankruptcy Rule

---

4. I note that even if the extension constitutes a modification requiring compliance with

§ 1127(b)–(d), many of the procedural requirements have been met. Despite Beal's conten-

7052 in support of its Order. Though a bankruptcy court need not make findings with respect to every factual issue, it must indicate the evidentiary basis for its decision. *In re Garrett Road Supermarket, Inc.*, 95 B.R. 906, 908 (E.D.Pa.1989), *citing United States v. F.D. Rich Co., Inc.*, 439 F.2d 895, 899 (8th Cir.1971). Where facts which will support a judgment can be inferred from a court's findings, an appellate court will deem that such inferences were drawn. *In re Brown*, 21 B.R. 701, 703 (1st Cir. BAP 1982). In the present case I hold that the Bankruptcy Court has met these minimum requirements.

AND NOW this 12th day of August 1996, upon consideration of the briefs of the parties, it is hereby ordered that the Order of the Bankruptcy Court requiring the debtor to make payment pursuant to the terms of the confirmed plan of reorganization is AFFIRMED.

tions, the Court did not act *sua sponte*, but rather responded to the Debtor's requests for relief made in its Answer to Beal's Motion and at hearings before the Court. At least three separate hearings concerning the proposed assignment to Bombardier occurred between May 11 and August 3, 1995. Beal received notice of the proposed deadline extension on July 19. Furthermore, given the immaterial nature of the modification, no further disclosure or solicitation was required. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 411, U.S.Code Cong. & Admin.News 1978, p. 6367 (1977) ("if the modification were sufficiently minor, the court might determine that additional disclosure was not required."); 5 Collier on Bankruptcy, para 1127.03, p. 1127–6 (15th ed. 1987) ("a new disclosure statement is not required in every case where a modification is requested."); *In re American Solar King*, 90 B.R. 808, 826 (Bankr.W.D.Texas 1988) (holding that if a modification is immaterial, it is not adverse and thus prior acceptances are deemed to apply to the amended plan).

However, the record is unclear as to the requirement set out in § 1127(b) that the confirmed plan not be substantially consummated.