NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-3371

_____

In re:  SCH CORP., et al.,

Debtors

CFI CLASS ACTION CLAIMANTS,

Appellants


_____

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-12-cv-01577)
District Judge: Honorable Sue L. Robinson

_____

Argued April 8, 2014

Before:  AMBRO, JORDAN, and ROTH, <u>Circuit Judges</u>

(Opinion filed: June 17, 2014 )

Irv Ackelsberg, Esquire   (Argued)
Howard I. Langer, Esquire
John J. Grogan, Esquire
Langer, Grogan & Diver
1717 Arch Street
The Bell Atlantic Tower, Suite 4130
Philadelphia, PA   19103

Christopher D. Loizides, Esquire
Loizides & Associates
1225 King Street, Suite 800
Wilmington, DE   19801

        Counsel for Appellants

Thomas H. Kovach, Esquire
Anthony M. Saccullo, Esquire
A.M. Saccullo Legal
27 Crimson King Drive
Bear, DE   19701

Daniel K. Astin, Esquire
John D. McLaughlin, Jr., Esquire   (Argued)
Joseph J. McMahon, Jr., Esquire
Ciardi Ciardi & Astin
1204 North King Street
Wilmington, DE   19801

      Counsel for Appellee

_____

OPINION
_____

AMBRO, Circuit Judge

The CFI Class Action Claimants ("CFI Claimants") challenge the District Court's dismissal of their bankruptcy appeal as equitably moot.  Because the District Court dismissed the appeal despite a finding that reversing the plan of liquidation would not result in any inequity, and because our opinion in *In re Semcrude, L.P.*, 728 F.3d 314 (3d Cir. 2013), came after the District Court's decision in this case, we vacate the dismissal order and remand the case for further consideration.

SCH Corp., American Corrective Counseling Services, Inc., and ACCS Corp. (jointly and severally, the "Debtors") were in the debt collection business in January 2009 when they filed for Chapter 11 bankruptcy in the District of Delaware.  The cases were consolidated, and Carl Singley was appointed as the disbursing agent, litigation designee,

and responsible officer for each Debtor. The CFI Claimants were the largest group of unsecured creditors in the bankruptcy based on their role as plaintiffs in pending class action lawsuits against the Debtors in California, Florida, and Indiana. The lawsuits generally alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and similar statutes. A group of plaintiffs with claims pending in Pennsylvania (the "Pennsylvania Claimants") comprised a separate class because an insurance policy held by the Debtors applied to their claims.

The plan of liquidation provided for the sale of the Debtors' business to National Corrective Group, Inc. ("NCG"), a subsidiary of their largest secured creditor. The CFI Claimants rejected a first proposed plan because it included third-party releases that would prohibit them and others from pursuing claims against NCG post-bankruptcy. An amended plan, which removed the releases but decreased the required plan funding, was confirmed in November 2009 with active support from the CFI Claimants. The confirmed plan required NCG to pay the Debtors $200,000 per year for five years but allowed it to offset these payments by certain litigation costs. For their part, the Pennsylvania Claimants received a judgment against the Debtors for $2.55 million, enforceable solely against the Debtors' insurer. Soon after confirmation, about $200,000 was distributed under the plan to cover the fees of bankruptcy counsel and other preferential claims. However, NCG asserted its set-off rights with respect to the annual payments, and thus very little, if any, funds have been distributed to unsecured creditors (including the CFI Claimants) under the plan.

3

NCG's set-off rights came quickly into play as a result of litigation that was filed by counsel for the CFI Claimants ("CFI Counsel") shortly after the plan was confirmed. By January 2010 CFI Counsel, representing a new set of plaintiffs, filed suit against NCG in California. Like the pre-bankruptcy suits against the Debtors, this class action lawsuit against NCG alleged violations of the FDCPA, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and state law. To their dismay, based on their dual representation of the CFI Claimants and the plaintiffs in the new California litigation, NCG moved to disqualify CFI Counsel in both the pre- and post-bankruptcy litigation in that State. The motions in both cases were granted.

Following the disqualification orders in California, the CFI Claimants (through their counsel) moved to dismiss the Debtors' bankruptcy cases for lack of good faith or, in the alternative, to enforce the terms of the amended plan. The CFI Claimants argued that Singley and NCG acted in bad faith by transferring the Debtors' business to NCG while effectively insulating the new company from liability. Although formally styled as a motion to dismiss, the CFI Claimants sought a range of relief, including the removal of Singley as the responsible officer and sanctions against NCG.

The Bankruptcy Court held three days of hearings before denying the motion to dismiss. It found, *inter alia*, that the bankruptcy was several years post-confirmation and, although no significant distributions had been made, that was not unexpected given the terms of the amended plan. App. at 127-30. It concluded that there was no persuasive evidence of gross negligence by Singley nor did he act in bad faith by cooperating with NCG's defense in the post-bankruptcy litigation in California. *Id.* at 129, 132. Finally,

4

the Bankruptcy Court noted that, to the extent CFI Counsel sought review of the disqualification rulings in California, a federal court in Delaware could not grant such relief. *Id.* at 133-34.

The CFI Claimants appealed that order to the District Court pursuant to 28 U.S.C. § 158(a). Instead of deciding the appeal on the merits, the District Court granted Singley's motion to dismiss the appeal as equitably moot. Applying our five-factor test from *In re Continental Airlines*, 91 F.3d 553, 560 (3d Cir. 1996) (*en banc*), the Court determined as follows:

> The amended plan at bar has been substantially consummated. Debtors' assets have been transferred to NCG and some professionals have been paid under the amended plan. However, there have been no distributions to any unsecured claimants. Arguably, the only aspects of plan implementation that require reversal are the limited number of distributions that have occurred. Therefore, the record does not indicate that reversing the amended plan would result in "great difficulty or inequity." The first factor, therefore, weighs against dismissal.
>
> All other prudential factors weigh in favor of dismissal. No stay has been sought either during confirmation of the amended plan or in the three years since the liquidation plan was confirmed. The relief requested would affect third parties not presently before the court, including both Pennsylvania class claimants who have received a final and non-appealable judgment allowing a $2.55 million proof of claim under the amended plan, and the professionals who have had funds distributed to them under the amended plan. The relief requested would rescind the amended plan in its entirety, reducing the debtors' ability to liquidate. Further, public policy affords finality to bankruptcy judgments.

*In re SCH Corp.*, Civ. No. 12-1577, 2013 WL 3380440, at *3 (D. Del. July 8, 2013) (footnotes and citations omitted).

In this context, we address only the narrow question of whether the District Court properly dismissed the bankruptcy appeal as equitably moot. It had jurisdiction under 28 U.S.C. §§ 158(a) and 1334. We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291.

5

We review the Court's equitable mootness determination for abuse of discretion. *Continental*, 91 F.3d at 560.

Federal courts have a "'virtually unflagging obligation' . . . to exercise the jurisdiction conferred on them." *Semcrude,* 728 F.3d at 320 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). To dismiss in the face of this strong presumption should occur only where granting relief is "almost certain to produce a perverse outcome[.]" *Id.* (internal quotation marks and citation omitted).

As noted, in *Continental* we listed five factors that an appellate court should consider when equitable mootness is alleged. *Semcrude,* synthesizing further the analysis in *In re Phila. Newspapers, LLC*, 690 F.3d 161, 168 (3d Cir. 2012), explained how appellate courts should apply these five factors (which often overlap) in practice:

> [I]t is useful to think of equitable mootness as proceeding in two analytical steps: (1) whether a confirmed plan has been substantially consummated; and (2) if so, whether granting the relief requested in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation.

728 F.3d at 321. However, *Semcrude* was filed after the District Court dismissed the CFI Claimants' appeal and thus was not available for consideration.

What gives us pause in reviewing the District Court's order is the conclusion that dismissal was appropriate even though "the record does not indicate that reversing the amended plan would result in 'great difficulty or inequity.'" *SCH*, 2013 WL 3380440, at *3. To invoke equity when there is no inequity is counterintuitive. Moreover, it is in tension with the guiding principle that matters should generally be decided on their merits when that is possible.

6

We also question whether the District Court considered the full range of relief the CFI Claimants sought and the specific effect that relief would have on third parties. While the Court noted the potential effect of the appeal on the Pennsylvania Claimants and the professionals paid under the amended plan, it seems only to have considered the possibility of rescinding the confirmation plan in its entirety. As noted above, the CFI Claimants sought not only dismissal of the bankruptcy cases but, in the alternative, other relief that included enforcement of the terms of the plan, removal of Singley as responsible officer, and sanctions against NCG. (As NCG was not a party to the appeal, it may not be within the power of the District Court to award a sanction against it.) Should the District Court wish to revive a dismissal for reasons of equity, it should consider all forms of relief sought, as "the feared consequences of a successful appeal are often more appropriately dealt with by fashioning limited relief at the remedial stage than by refusing to hear the merits of an appeal at its outset." *Semcrude*, 728 F.3d at 324 (citing *Continental*, 91 F.3d at 571-72 (Alito, J., dissenting)). Moreover, a merits decision may be necessary because "[d]ismissing an appeal as equitably moot should be rare, occurring only where there is sufficient justification to override the statutory appellate rights of the party seeking review." *Id.* at 326-27.

We thus vacate the District Court's order and remand for it to reconsider the appeal of the CFI Class Action Claimants.