**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2888
_____

In re: SCH CORP., et al.,

Debtors

v.

CFI CLASS ACTION CLAIMANTS,

Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-12-cv-01576)
District Judge: Hon. Sue L. Robinson
_____

Argued December 9, 2014

BEFORE: VANASKIE, GREENBERG, AND COWEN, <u>Circuit Judges</u>

(Filed: February 24, 2015)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Irv Ackelsberg, Esq. (Argued)
Howard I. Langer, Esq.
Langer, Grogan & Diver
1717 Arch Street
Suite 4130, The Bell Atlantic Tower
Philadelphia, PA 19103

Christopher D. Loizides, Esq.
Loizides
1225 King Street, Suite 800
Wilmington, DE 19801

  Counsel for Appellant

Thomas H. Kovach, Esq.
Anthony M. Saccullo, Esq.
A.M. Saccullo Legal
27 Crimson King Drive
Bear, DE 19701

John D. McLaughlin, Jr., Esq. (Argued)
Ciardi, Ciardi & Astin
1204 North King Street
Wilmington, DE 19801

  Counsel for Appellee

COWEN, Circuit Judge.

For the second time, this Court must address an appeal filed by the "CFI Claimants" with respect to post-confirmation bankruptcy proceedings arising out of the Chapter 11 bankruptcy of SCH Corp., American Corrective Counseling Services, Inc., and ACCS Corp. ("Debtors"). The District Court affirmed the order of the Bankruptcy Court granting the motion filed by Appellee Carl Singley, the Debtors' disbursing agent, litigation designee, and responsible officer ("Responsible Officer"), to approve the settlement he reached with the plan funder, National Corrective Group, Inc. ("NCG"),

2

pursuant to Federal Rule of Bankruptcy Procedure 9019. We determine that this purported settlement really constituted a plan modification governed by 11 U.S.C. § 1127. Accordingly, we will vacate the District Court's order and remand with instructions for the District Court to vacate the Bankruptcy Court's order and to direct the Bankruptcy Court to consider the purported settlement as a request for a plan modification pursuant to § 1127.[1]

I.

The Debtors were in the debt collection business when they filed for Chapter 11 bankruptcy in the District of Delaware in January 2009. Previously, class action proceedings were filed against the Debtors in California, Florida, Indiana, and Pennsylvania, alleging, inter alia, violations of the Fair Debt Collection Practices Act ("FDCPA"). The plaintiffs in the class action cases filed in the Northern District of California, the Middle District of Florida, and the Northern District of Indiana shared a common legal team ("CFI Counsel"). These "CFI Claimants" constituted the largest group of unsecured creditors in the bankruptcy cases.

On February 10, 2009, the Bankruptcy Court approved the Debtors' motion to conduct an auction for the sale of their operating assets. The Debtors then filed a motion to approve the sale of substantially all of their assets to Levine Leichtman Capital Partners

---

[1] Alternatively, the CFI Claimants argue that the Bankruptcy Court misapplied the standard governing the review of proposed settlements under Rule 9019 and approved a fundamentally flawed settlement. Because the purported settlement should have been treated as a request for a plan modification in the first place, we need not—and do not—reach their additional contentions.

3

III, L.P. ("LLCP"), an investment firm and the Debtors' largest secured creditor. The CFI Claimants objected and moved to dismiss the bankruptcy cases. On March 31, 2009, the Bankruptcy Court denied the CFI Claimants' motion to dismiss and authorized the transfer of the Debtors' assets to NCG. NCG is a subsidiary of LLCP. The sale was consummated on April 11, 2009.

After the CFI Claimants rejected the initial proposed plan of liquidation because it included third-party releases that would have barred claims against LLCP and NCG, LLCP filed a proposed amended plan. With some changes, this revised plan was actively supported by the CFI Claimants. The plan was confirmed by the Bankruptcy Court in a November 2, 2009 order. LLCP served as the plan proponent and sponsor, while NCG functioned as the plan funder. NCG agreed to pay up to $200,000 per year for five years—with the first payment to be made in April 2010 and the final payment due in April 2014. However, these payments were subject to offsets for unpaid professional fees and up to $500,000 for "Post-Sale Losses" incurred by LLCP or NCG in defending against future consumer lawsuits. The Bankruptcy Court approved Singley's appointment as the Responsible Officer. It also expressly retained jurisdiction to administer and interpret the plan's provisions, modify any provisions of the plan to the extent permitted by the Bankruptcy Code, and enter such orders as may be necessary or appropriate in furtherance of the successful implementation of the plan.

CFI Counsel filed a lawsuit in the Northern District of California against NCG (which was now operating the Debtors' debt collection business) and LLCP, alleging,

4

inter alia, violations of the FDCPA. CFI Counsel also assisted in a class action lawsuit filed in the Middle District of Pennsylvania against NCG and LLCP. "To their dismay, based on their dual representation of the CFI Claimants and the plaintiffs in the new California litigation, NCG moved to disqualify CFI Counsel in both the pre- and post-bankruptcy litigation in that State. The motions in both cases were granted." In re SCH Corp., 569 F. App'x 119, 120 (3d Cir. 2014). The Ninth Circuit also denied CFI Counsel's petition for a writ of mandamus. CFI Counsel withdrew from both the California and Pennsylvania proceedings. A CFI Class Claimant filed a class action malpractice suit in the California state courts alleging conflicts of interest against several members of the CFI legal team and their law firms, and the Responsible Officer commenced a similar adversary action against CFI Counsel who filed the post-bankruptcy California case against NCG and LLCP (as well as their clients). The Bankruptcy Court subsequently dismissed this adversary proceeding.

NCG asserted its offset rights with respect to the annual Post-Sale Payments, and, therefore, very little, if any, funds have been distributed to unsecured creditors under the confirmed plan. In particular, it claimed offsets for litigation expenses reimbursed by insurance. The CFI Claimants moved to dismiss the bankruptcy cases for lack of good faith or, in the alternative, to enforce the terms of the confirmed plan. The Responsible Officer filed a motion to approve a settlement he reached with NCG to resolve the funding dispute. Under this proposed settlement, NCG's payment obligation for the period ending in April 2014 was fixed at $233,631. NCG also agreed to make three additional annual

5

payments of up to $100,000 in 2015, 2016, and 2017. Although NCG waived its rights to take offsets for any expenses that may or have been reimbursed through insurance coverage or to apply historic offset rights (i.e., those arising before the effective date of the settlement) against the future payments, these future payments were still subject to offsets for future litigation expenses "provided, however, that such Post-Sale Losses shall not reduce the annual payment on the sixth, seventh and eighth anniversaries beyond a $25,000 'floor.'" (A212 (emphasis omitted).) In addition, the Responsible Officer, LLCP, and the Responsible Officer's own counsel agreed to certain monetary concessions.

The CFI Claimants objected to the proposed settlement on a number of grounds. According to them, "[t]he proposed three-year extension of the Plan is, in effect, a proposed, post-confirmation request to modify the Plan" that "would be governed by 11 U.S.C. § 1127(b), and, by incorporation, 11 U.S.C. § 1129." (A77.) Noting that the Bankruptcy Court must review a proposed settlement under the four-factor standard established by this Court in In re Martin, 91 F.3d 389 (3d Cir. 1999), the CFI Claimants argued that "'the paramount interest of the creditors'—the fourth Martin factor—would not be furthered in any way by the compromise." (A75.) The CFI Claimants also questioned whether the settlement was the result of arms-length negotiations.[2] The

---

[2] It appears that Singley was "Of Counsel" to Ciardi, Ciardi & Austin ("CC & A"). CC&A previously represented LLCP in the bankruptcy proceedings. In connection with Singley's appointment as the Responsible Officer, it was agreed that CC&A and LLCP would execute a conflicts waiver, CC&A would terminate its representation of LLCP in the bankruptcy cases, neither CC&A nor the Responsible Officer would represent LLCP in such cases, and, if a matter arises in these cases that may be adverse to LLCP, the Responsible Officer would obtain conflicts counsel. In a waiver letter, CC&A agreed not

Responsible Officer, in turn, moved to disqualify CFI Counsel.  However, his motion was subsequently withdrawn.

The Bankruptcy Court conducted an evidentiary hearing on the CFI Claimants' motion to dismiss as well as the Responsible Officer's motion to approve the settlement. In an October 12, 2012 order, the Bankruptcy Court granted the Responsible Officer's motion, approved and authorized the parties to execute and implement the settlement, and retained jurisdiction to interpret and enforce the settlement.  It also entered a separate order denying the CFI Claimants' motion to dismiss.  In an oral decision delivered by telephone on September 14, 2012, the Bankruptcy Court considered the settlement under the Martin standard (i.e., the probability of success in the underlying litigation, likely collection difficulties, the complexity of the litigation as well as the expense, inconvenience, and delay necessarily attending it, and the paramount interest of the creditors).  In addition to disposing of the CFI Claimants' challenge to the "bonafieties [phonetic] of the settlement as a threshold matter" (A109) and their contention that the settlement should be rejected because "no distribution will ever be made to unsecured

_____

to bring any causes of action against NCG (or its affiliates) on behalf of the Responsible Officer in the bankruptcy cases or in any other matter.  Furthermore, "Ciardi will also not disclose any Confidential Information [which includes "all information of which unauthorized disclosure could be detrimental to the interests of NCG"] of NCG or information protected by the attorney-client privilege of NCG to Singley."  (A228.) CC&A represented LLCP as local counsel in litigation in the Middle District of Pennsylvania, represented LLCP as local counsel in the bankruptcy cases, and "currently represents LLCP on various matter that are not related to the Bankruptcy Case or the matters for which Singley has retained Ciardi."  (A229.)  CC&A represented the Responsible Officer in the settlement negotiations (and has continued to represent the Responsible Officer in the post-confirmation Bankruptcy Court proceedings as well as in

creditors" (A112), the Bankruptcy Court determined that the Responsible Officer satisfied the first, third, and fourth Martin factors (and indicated that the second factor likewise weighed, at least in part, in his favor).

The CFI Claimants appealed to the District Court from the denial of their motion to dismiss. The District Court dismissed the appeal as equitably moot in a July 8, 2013 order. On June 17, 2014, we vacated the District Court's dismissal order and remanded for further proceedings "[b]ecause the District Court dismissed the appeal despite a finding that reversing the plan of liquidation would not result in any inequity, and because our opinion [addressing the equitable mootness doctrine] in In re Semcrude, L.P., 728 F.3d 314 (3d Cir. 2013), came after the District Court's decision in this case." SCH Corp., 569 F. App'x at 122. We also questioned whether the District Court considered the full range of relief the CFI Claimants sought in their motion (e.g., enforcement of the terms of the confirmed plan, removal of the Responsible Officer, and sanctions against NCG) and the specific effect such relief would have on third parties.

The CFI Claimants likewise appealed to the District Court from the Bankruptcy Court's order granting the Responsible Officer's motion to approve the settlement. On April 2, 2014, the District Court dismissed their appeal and affirmed the order of the Bankruptcy Court. According to the District Court, the Bankruptcy Court properly applied the Martin factors to determine that the settlement at issue here was fair and equitable and adequately addressed the CFI Claimants' allegations of collusion as well as

the appellate proceedings before both the District Court and this Court).

8

their theory that "'NCG began a multi-forum strategy to use the anticipated litigation and plan provisions concerning offsets as weapons to drive a wedge between the CFI consumers and their counsel.'" In re: SCH Corp., Bank. No. 09-10198 (BLS), Civ. Nos. 12-1576-SLR, 2014 WL 1340234, at *4 (D. Del. Apr. 2, 2014) (citation omitted). In a footnote, the District Court disposed of the CFI Claimants' argument that the settlement was actually a plan modification subject to § 1127. According to the District Court, the CFI Claimants offered little support for this argument, which "does not appear to have been raised before." Id. at *4 n.5. "[The Responsible Officer's] response that the settlement resolves a funding dispute and does not modify the amended plan is consistent with the bankruptcy court's statement that, '[t]rying the issue would therefore likely involve witnesses' recollections as to the parties' intentions and expectations in negotiations and a deal that is now three years past.'"[3] Id. (quoting A110-A111).

## II.

Under § 1127(b), the plan proponent or reorganized debtor may at any time modify a confirmed plan "before substantial consummation of such plan."[4] However, "[s]uch

---

[3] The CFI Claimants filed a motion for rehearing with the District Court. The District Court denied their motion in a May 7, 2014 order, explaining that it addressed "the CFI claimants' argument that the bankruptcy court's extension of the term of the confirmed plan violated 11 U.S.C. § 1127(d)." (A59 (citing SCH Corp., 2014 WL 1340234, at *4).)

[4] The District Court had jurisdiction over the CFI Claimants' appeal from the Bankruptcy Court's order granting the Responsible Officer's motion to approve the settlement pursuant to 28 U.S.C. § 158(a)(1). We possess appellate jurisdiction over their appeal from the District Court's order under § 158(d)(1) and 28 U.S.C. § 1291. It is uncontested that bankruptcy court orders are generally reviewed under an abuse of discretion standard. "Our review of the District Court's decision effectively amounts to

9

plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title." Although "'modification' is not defined in the Bankruptcy Code, courts that have analyzed the issue of whether a subsequent change to a confirmed plan of reorganization constitutes a 'modification' distinguish between the courts' inability to 'modify' a plan and their ability to 'clarify a plan where it is silent or ambiguous'; and/or 'interpret' plan provisions to further equitable concerns.'"[5] In re

---

review of the bankruptcy court's opinion in the first instance." In re Hechinger Inv. Co. of Del., 298 F.3d 219, 224 (3d Cir. 2002) (citing In re Telegroup, Inc., 281 F.3d 133, 136 (3d Cir. 133, 136 (3d Cir. 2002)). An abuse of discretion is committed if the bankruptcy court's ruling "'rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.'" In re 15375 Mem'l Corp., 589 F.3d 605, 616 (3d Cir. 2009) (citing In re SGL Carbon Corp., 200 F.3d 154, 159 (3d Cir. 1999)).

Evidently suggesting that this case is now moot, the Responsible Officer claims that "the 'CFI' acronym is no longer applicable" and that it is unclear what will happen to any funds that may be distributable to those purported CFI Claimants. (Appellee's Brief at 16.) He notes that a final report was filed in the bankruptcy cases and that, on October 16, 2013, a final decree and order was entered administratively closing these cases. According to the Responsible Officer, the California pre-bankruptcy proceeding was dismissed with prejudice (and the class itself was de-certified), the Florida case was settled prior to class certification, and "the lone remaining class members are those in the class certified in [Indiana], which is currently dismissed pending re-opening." (Id. at 17.) It appears that a settlement was approved in the post-bankruptcy lawsuit filed in California against NCG and LLCP (and that this settlement disposed of the Pennsylvania proceeding against these two entities). However, we agree with the CFI Claimants that such circumstances have not mooted their current appeal. The terms "CFI Class Actions," "CFI Class Action Claimants," and "CFI Action Monetary Claims" were expressly defined in the confirmed plan itself, and it appears that these categories were not made contingent on the outcome of the various class action proceedings. After all, any claims against the Debtors in the California, Florida, and Indiana cases were stayed as a result of their Chapter 11 filings, and these class action cases then went forward against the remaining co-defendants.

[5] The District Court suggested that the CFI Claimants failed to raise their plan

10

Ampace Corp., 279 B.R. 145, 152-53 (Bankr. D. Del. 2002) (citing In re Beal Bank, S.S.B., 201 B.R. 376, 380 (E.D. Pa. 1996); In re Harness, 218 B.R. 163, 166 (D. Kan. 1998)).

The Bankruptcy Court abused its discretion by failing to consider the purported settlement as a modification of a confirmed plan governed by § 1127.  According to the Responsible Officer and the District Court, the proposed settlement simply resolved a dispute concerning the interpretation of the plan confirmed by the Bankruptcy Court, which was silent on the specific issue of whether insurance coverage would negate NCG's offset rights.  The CFI Claimants acknowledge that, if the settlement merely provided for compromised payments within the five-year time period specified in the confirmed plan, such an agreement would not rise to the level of an impermissible plan modification.  However, the Responsible Officer and NCG actually negotiated what the Responsible Officer calls an "extension of the plan funding period." (Appellee's Brief at 41.)  In short, the confirmed plan required NCG to make five annual payments, subject to offsets for

modification argument before the Bankruptcy Court, and the Responsible Officer likewise indicates that it was addressed only in passing at the District Court level.  However, it is uncontested that (as the Responsible Officer put it), "the Appellant's initial Objection contained a five-line single paragraph concerning this issue" and, "[i]n the 57 pages of briefing in the District Court, the Appellant addressed this issue in 3 paragraphs, which amount to approximately 2 pages."  (Appellee's Brief at 39 n.12 (citing A77).)  For his part, the Responsible Officer has addressed the merits of this plan modification issue before the Bankruptcy Court, the District Court, and this Court itself (and, in fact, the Responsible Officer does not expressly claim in the appellate brief he filed with this Court that it has been waived).  The District Court disposed of the issue on its merits.  Although the CFI Claimants could (and should) have addressed this plan modification issue in more detail before the Bankruptcy and District Courts, we follow the District Court's example and address the merits of the CFI Claimants' theory that the settlement constituted a plan

11

litigation expenses, by April 2014, while the purported settlement approved by the Bankruptcy Court provided for three additional payments subject to the same basic offset mechanism in 2015, 2016, and 2017. According to the Responsible Officer, this arrangement did not modify any terms of the confirmed plan because it left unchanged the basic nature of the economic relationship with NCG and allegedly provided the estate the benefit of up to $300,000 that would have been otherwise offset by NCG under the confirmed plan. However, a plan modification that allegedly provides greater economic benefits for the estate and its creditors remains a plan modification governed by § 1127— not a settlement to be reviewed under Rule 9109. According to the CFI Claimants, this three-year extension of the plan funding period actually had the practical effect of preventing CFI Counsel from litigating class action consumer claims against LLCP and NCG for an additional three years. Given the circumstances, we believe that the extension of (what the Bankruptcy Court at the evidentiary hearing called) "the life of the economic relationships that we have" (A515) rises to the level of a plan modification subject to § 1127. In other words, turning a five-year plan into an eight-year plan constitutes a modification of the plan itself.

Furthermore, the case law generally weighs in support of our determination that the purported settlement at issue in this case really constituted a plan modification. See, e.g., In re Braniff Airways, Inc., 700 F.2d 935, 940 (5th Cir. 1983) ("This provision [of the PSA agreement] not only changed the composition of Braniff's assets, the contemplated

modification subject to § 1127.

12

result under [11 U.S.C.] § 363(b), it also had the practical effect of dictating some of the terms of any future reorganization plan. The reorganization plan would have to allocate the scrip according to the terms of the PSA agreement or forfeit a valuable asset. The debtor and the Bankruptcy Court should not be able to short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with the sale of assets."); Enterprise Fin. Group, Inc. v. Curtis Mathes Corp., 197 B.R. 40, 45 (E.D. Tex. 1996) (concluding that, even if proposed change more accurately reflected intent of plan, change that allowed reorganized debtor to pursue some third-party claims modified material and unambiguous term of confirmed plan that provided that all claims were retained by liquidating trust, and could not be considered as mere clarification); In re Reserve Capital Corp., Nos. 03-60071 to 03-60078, 2007 WL 1989285, at *2 (Bankr. N.D.N.Y. Jul. 6, 2007) (summarizing remand order that directed bankruptcy court to evaluate whether approved settlement, although found to be fair, reasonable, and in best interest of estate under Rule 9019, nevertheless constituted improper post-confirmation modification of confirmed plan), aff'd sub nom. Hawkins v. Chapter 11 Tr,, Dist. Ct. Civil Action No. 6:07-CV-0766 (LEK), 2009 WL 701115 (N.D.N.Y. Mar. 13, 2009); Ampace Corp., 279 B.R. at 151-54 (concluding that extension of deadline for claim objections constituted plan modification under § 1127); In re Concrete Designers, Inc., 173 B.R. 354, 355-59 (Bankr. S.D. Ohio 1994) (refusing to confirm proposed second amended plan because second amended disclosure statement provided for dividend to unsecured creditors of 100% over five years or lump sum

payment of 40% but second amended proposed plan provided for either dividend of 80% over four years or lump sum payment of 50%).

The Responsible Officer turns for support to an unpublished ruling by the Ninth Circuit as well as an Eastern District of Pennsylvania decision. Both opinions are distinguishable, and, in any event, they are not binding on this Court (or, for that matter, the Ninth Circuit). In in re Acequia, Inc., 996 F.2d 1223, 1993 WL 219865 (9th Cir. 1993) (memorandum) (unpublished opinion), the confirmed plan required the debtor to execute an amended note with an eight-year maturity date in favor of its largest creditor, but, due to state court litigation regarding the terms of the note, execution was delayed for five years, id. at *1-*2. The debtor and the creditor entered a settlement agreement that extended the maturity date. Id. at *1. The Ninth Circuit determined that the second amended note executed pursuant to the settlement agreement did not constitute an impermissible plan modification. Id. at *1-*3. According to the Acequia court, "'*the Amended Note is of the same duration as called for in the Plan, and that since its creation was anticipated in the Plan, it does not alter any material terms of the Plan and is not subject to the provisions of § 1127*.'" Id. at *2 (quoting district court opinion). Likewise, the district court in In re Beal Bank, S.S.B., 201 B.R. 376 (E.D. Pa. 1996), upheld the bankruptcy court's exercise of its equitable powers to extend a payment deadline by a relatively short period of time (i.e., for sixty days), noting that this extension did not alter substantive rights or frustrate legitimate claims and that the objecting party shared some responsibility for the delay, id. at 380. In contrast to the note with the same duration at

issue in Acequia as well as the brief extension of a payment deadline addressed in Beal Bank, the purported settlement at issue in this case added three years to a five-year plan. Such a drastic step should not be taken under the guise of either a plan interpretation, the exercise of equitable powers, or a Rule 9019 settlement.

Because the purported settlement constituted a plan modification, we will remand this matter to the Bankruptcy Court to consider this purported settlement as a modification request pursuant to § 1127. The CFI Claimants question whether, "in the third year of a five-year plan, with the plan funder (NCG) taking the position with Appellee that it had fully complied with its payment obligations under the plan, that Appellee would argue that the plan had not been 'substantially consummated.'" (Appellants' Brief at 38 (footnote omitted).) They further observe that the Responsible Officer asked the District Court to dismiss the CFI Claimants' appeal from the order denying the motion to dismiss the bankruptcy cases on the grounds that the plan had been consummated (and that the District Court did dismiss the appeal as equitably moot). In addition to noting that the substantial consummation determination would be made "as of the time of the modification (i.e., the Settlement)," the Responsible Officer suggests in passing that this Court "can determine that the requirements of Section 1127 of the Bankruptcy Code were satisfied through the hearing before the Bankruptcy Court on the Settlement." (Appellee's Brief at 40 n.13 (citing Beal Bank, 201 B.R. at 380 n.4).) However, we believe that it is appropriate for the Bankruptcy Court to conduct the requisite inquiry under § 1127.

III.

15

We will vacate the District Court's order and remand with instructions for the District Court to vacate the Bankruptcy Court's order and to direct the Bankruptcy Court to consider the purported settlement as a request for a plan modification pursuant to § 1127.